IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION

| | | |
|---|---|---|
| AMOS LEE DRYER, | : | |
| Plaintiff, | : | |
| VS. | : | CIVIL ACTION FILE NO. |
| | : | **1: 05-CV-161 (WLS)** |
| KEVIN ROBERTS, et. al, | : | |
| Defendants. | : | |

**RECOMMENDATION**

Presently pending in this *pro se* prisoner 42 U.S.C. §1983 action is defendants' motion for summary judgment (doc. 41).

At all times relevant to this case, plaintiff was an inmate at Calhoun State Prison, where defendants were also employed. Plaintiff states that on July 11, 2005 he severely injured his back while moving several chairs at Calhoun State Prison. Plaintiff alleges that his back hurt so badly, he was unable to move. According to Plaintiff, Officer McDaniel and Sgt. Lavett informed him that they would report the incident to the medical unit and help him get medical attention. Plaintiff states that these two defendants failed to get him medical help. Plaintiff alleges that when he was finally allowed to see Dr. Ayers, the doctor failed to perform any x-rays on his back or provide any treatment for his back whatsoever. Plaintiff also complains that he suffers from hepatitis C and Dr. Ayers refuses to give him any medications or treatment for this condition at all.

According to plaintiff, he is still suffering severe pain due to the back injury and complications from hepatitis C. Plaintiff states he has reported his injuries and pain to the Warden (K. Roberts), L. Bridges, and D. W. Cross. However, these individuals refuse to help

him at all.

In determining a summary judgment motion, the inferences drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. Welch v. Celotex Corp., 951 F.2d 1235 (11th Cir. 1992)(citing Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574 (1986). However, once the movant demonstrates the absence of a genuine issue of material fact, the nonmovant must "make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

When the nonmoving party has the burden of proof at trial, the moving party may carry its burden at summary judgment either by presenting evidence negating an essential element of the nonmoving party's claim, or by pointing to specific portions of the record which demonstrate that the nonmoving party cannot meet its burden of proof at trial. Clark v. Coats & Clark, Inc., 929 F.2d 604, 606-608 (11th Cir. 1991).

The existence of material disputed facts will not defeat summary judgment in favor of a public official, however, when the plaintiff "fails to make a showing sufficient to establish the existence of an element essential to [plaintiff's] case, and on which [plaintiff] will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Facts in dispute cease to be "material" facts when the plaintiff fails to establish a prima facie case. "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex, 477 U.S. at 322-23, 106 S.Ct. at 2552. Thus, under such circumstances, the public official is entitled to judgment as a matter of

2

law, because the plaintiff has failed to carry the burden of proof. This rule facilitates the dismissal of factually unsupported claims prior to trial.

It is well established that prison personnel may not subject inmates to "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." <u>Estelle v. Gamble</u>, 429 U.S. 97 (1976). However, "[m]ere incidents of negligence or malpractice do not rise to the level of constitutional violations." It must involve the "unnecessary and wanton infliction of pain contrary to contemporary standards of decency." <u>Helling v. McKinney</u>, 509 U.S. 25 (1993). Knowledge of the medical need alleged or circumstances clearly indicating the existence of such need is essential to a finding of deliberate indifference. <u>Hill v. Dekalb Regional Youth Detention Center</u>, 40 F.3d 1176, 1191 (11th Cir. 1994), quoting <u>Horn ex rel. Parks v. Madison Co. Fiscal Court</u>, 22 F.3d 653, 660 (6th Cir. 1994), cert. denied, 513 U.S. 873 (1994). In the medical context, an inadvertent failure to provide adequate medical care cannot be said to constitute "an unnecessary and wanton infliction of pain" or to be "repugnant to the conscience of mankind." In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. It is only such indifference that can offend "evolving standards of decency" in violation of the Eighth Amendment. "It is......true that when a prison inmate has received medical care, courts hesitate to find an Eighth Amendment violation." <u>McElligott v. Foley</u>, 182 F.3d 1248, 1256-1257 (11th Cir. 1999).

A medical need is considered "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." <u>Hill v. Dekalb Reg'l Youth Det. Ctr.</u>, 40 F.3d 1176, 1187 (11th

3

Cir.1994) (quotation marks and citation omitted). The medical care provided to an inmate must be reasonable. Patterson v. Riddle, 407 F. Supp. 1035 (E.D. Va. 1976). However, "it is not required that the medical care provided to the inmate be perfect, the best obtainable, or even very good." Estelle, 429 U.S. at 106. *See also* Harris v. Thigpen, 941 F.2d 1495, 1510 (11th Cir. 1991); Brown v. Beck, 481 F. Supp. 723, 726 (S.D. Ga. 1980); Hawley v. Evans, 716 F. Supp. 601, 603 (N.D. Ga.1989).

Plaintiff's medical records show that he arrived at Calhoun State Prison on April 22, 2004, and was enrolled in the Chronic Care Clinic for follow up of hypertension and Hepatitis C. According to Dr. Ayers, the treatment for Hepatitis C is continuously evolving and involves a great deal of clinical judgment. In determining whether an inmate may or should undergo the extensive treatment for Hepatitis C, Dr. Ayers considers the fact that the treatment requires taking medications for 48 weeks, with likely flu-like side effects for the entire period; that some inmates do not respond at all to the treatment; the chance of completely eradicating the virus at the end of treatment is less than 50 percent; and it is not uncommon for inmates to be worse off after beginning and not completing the treatment because of the side effects. Dr. Ayers Aff., para.5, doc. 44).

On June 5, 2003, the Department of Corrections issued a Hepatitis C Clinical Update which excluded inmates from further Hepatitis C testing and treatment consideration if their ALT and AST liver enzyme tests were not more than two times the normal levels. At that time, even if an inmates' enzyme levels were double the normal levels, the inmate would still have to undergo a liver biopsy and further evaluation to determine is he could receive the treatment. (Dr. Ayers Aff. Para. 6, doc. 44).

4

On May 19, 2004, Dr. Ayers saw plaintiff in the Chronic Care Clinic, where plaintiff requested treatment for Hepatitis C. Dr. Ayers reviewed plaintiff's ALT and AST test results, and because they were not at least twice the normal levels, told plaintiff he was not eligible for the Hepatitis C treatment. Dr. Ayers further states that he did not believe that plaintiff was in any danger of his Hepatitis C progressing to a point that posed a significant and imminent danger to his health if he did not receive the treatment at that time. (Dr. Ayers Aff. Para.7, doc. 44).

Dr. Ayers saw plaintiff again on August 6, 2004, where plaintiff again requested treatment for Hepatitis C and complained of back pain. Dr. Ayers Again explained why plaintiff did not meet the criteria for Hepatitis C treatment. On September 7, 2004, plaintiff was seen by P.A. Edwards, and was scheduled for follow up with labs in four months. (Dr. Ayers aff, para.9, doc. 44).

On July 14, 2005, P.A. Weaver saw plaintiff in sick call for complaints of back pain. He was assessed as having low back strain and was ordered Motrin, Robaxin and Percogesic with no detail for one week. Plaintiff was provided a follow-up on July 21, 2005. (Dr. Ayers aff. Para. 11, doc. 44).

On July 22, 2005, plaintiff was seen by defendant Brown for follow up of back pain. Plaintiff was admitted to the infirmary for uncontrolled blood pressure. A follow-up appointment was scheduled for two weeks later. On August 10, 2005, plaintiff was seen by Dr. Ayers for his requests for Hepatitis C treatment, but plaintiff became hostile and would not listen to Dr. Ayers explain the treatment. (Dr. Ayers aff. Para. 13, doc. 44).

On August 18, 2005, Dr. Ayers saw plaintiff for complaint of lower back pain. Dr. Ayers ordered an x-ray and no heavy lifting for a week, with follow up scheduled for September 8,

5

2005. (Dr. Ayers aff. Para. 14, doc. 44).

Dr. Ayers saw plaintiff on May 11, 2006 for hypertension and Hepatitis C and complaints of low back pain. Dr. Ayers observed plaintiff on May 17, 2006 and May 24, 2006 ambulating with no apparent difficulty, limping, or hesitancy. (Dr. Ayers Aff. Para. 16 and 17, doc. 44).

By November of 2004, according to Dr. Ayers affidavit, the medical science regarding Hepatitis C had changed and it was determined that an individual's Hepatitis C stage did not have any correlation to the ALT and AST liver enzyme tests. Therefore, the Department of Corrections issued a new Hepatitis C Clinical Update in November of 2004 which stated that if an inmate did not have any other factors that would preclude him from the treatment, he could undergo the liver biopsy test to determine the stage of his Hepatitis and whether treatment would be appropriate for the inmate. Dr. Ayers determined that plaintiff could undergo the liver biopsy test for further consideration. (Dr. Ayers aff. Para. 18).

On June 27, 2006, Dr. Ayers saw plaintiff in the clinic requesting a back specialist and MRI for his back pain. Dr. Ayers explained to plaintiff that he could have the liver biopsy due to the change in the Clinical Update, and ordered an x-ray for his back. Dr. Ayers completed the paperwork for plaintiff and faxed it to the appropriate entity. (Dr. Ayers aff. Para. 19, doc. 44).

On June 29, 2006, a lumbar x-ray was conducted and showed a normal study. (Dr. Ayers aff. Para. 20, doc. 44).

On July 10, 2006, plaintiff was seen by Dr. Cuartas for the Hepatitis C treatment, where the process was explained, including the side effects, and the consent process for the liver biopsy. Plaintiff was not cooperative, and left without signing the consent for liver biopsy which is a prerequisite for the treatment. (Dr. Ayers aff. Para. 21, doc. 44).

On July 13, 2006, plaintiff was seen by PA Edwards for complaints of headache, dizziness, and back pain. Edwards explained that plaintiff's x-ray and EKG results were normal, but added Cardizem 240 to plaintiff's treatment plan. (Dr. Ayers aff. Para. 22, doc. 44).

On August 1, 2006, plaintiff was sent to Augusta State Medical Prison to see Dr. Cuertas for the liver biopsy consent directive. Plaintiff was seen by Dr. Ayers on August 7, 2006 for follow up, and on August 29, 2006 by PA Edwards for discussion of labs and medications.

Plaintiff was subsequently transferred to Valdosta State Prison sometime around November of 2006, and on to Wheeler County Prison around June of 2007.

In opposition to defendants' motion for summary judgment, the record reflects plaintiff's five-page verified complaint (doc. 1), his two-page motion for summary judgment (doc. 31), and his objections to an earlier recommendation (doc. 51). The only evidence submitted by plaintiff other than his verified complaint are contained in his objections (doc. 51). They consist almost exclusively of documentation while at Valdosta State Prison, where plaintiff continued to request an MRI of his back and treatment for his Hepatitis C.

Even taking as true plaintiff's statements that he repeatedly requested specific medical care regarding his back pain and Hepatitis C, as is confirmed by the medical records submitted by defendants in support of their motion for summary judgment, it is clear that plaintiff received care for both conditions. Plaintiff's complaints amount to his opinion that defendants were not doing enough to alleviate his back pain or to give him a specific treatment for Hepatitis C.

The record in this case is replete with continuing medical treatment for plaintiff's conditions of low back pain and Hepatitis C. Just because a plaintiff disagrees with the medical decision does not evidence deliberate indifference to his serious medical needs. This case presents a

classic example of a plaintiff's disagreement with the medical judgment used in plaintiff's treatment, sounding in medical malpractice. To demonstrate "significant" harm, a plaintiff must provide verifying medical evidence that proves that it was the denial or delay in medical treatment that caused the harm rather than an underlying condition or injury. Hill, 40 F.3d at 1186; Harris, 21 F.3d at 393-94 (11th Cir.1994). Nothing plaintiff has provided the court, nor anything revealed by a review of the record, rebuts defendants' properly supported motion for summary judgment.

*Failure to Exhaust*

Defendants also assert that plaintiff failed to exhaust administrative remedies prior to filing this lawsuit. Plaintiff originally filed this complaint on October 11, 2005. According to affidavits submitted by defendants, plaintiff filed a grievance on August 11, 2005 complaining that he was not receiving proper care for his back and Hepatitis C and requesting that he see a medical doctor instead of a Physician's Assistant. This grievance was apparently rejected as plaintiff did not comply with Standard Operating Policy requiring only one issue per grievance. Plaintiff received the notice that the grievance was rejected on September 1, 2005. (Cross Affidavit, SOP IIB05-0001).

The remainder of the grievances filed regarding the issues in this case were filed after plaintiff filed this lawsuit, including the ones submitted by plaintiff in his objections (doc. 51).

Section 1997e(a) of the PLRA mandates that "no action shall be brought" by a prisoner under any federal law until the prisoner has exhausted all "administrative remedies as are available," as follows:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison or

> other correctional facility until such administrative remedies as are available are exhausted.

Alexander v. Hawk, 159 F.3d 1321, 1324 (11th Cir. 1998).

"That provision plainly requires that administrative remedies be exhausted *before* the filing of suit, rather than while the action is pending." Wendell v. Asher, 162 F.3d 887, 890 (5th Cir. 1998) (emphasis in original). According to records maintained at the prison, plaintiff has failed to exhaust the administrative remedies available to him. Plaintiff has failed to rebut this evidence in any way. Plaintiff has not satisfied the exhaustion requirement of § 42 U.S.C. 1997(e). The clear mandate of Alexander v. Hawk is that a prisoner must exhaust the remedies available under an administrative remedy program before filing an action such as this.

Therefore, it is the RECOMMENDATION of the undersigned that defendants' motion for summary judgment be **GRANTED**. Pursuant to 28 U.S.C. § 636(b)(1), the parties may file written objections to this recommendation with the Honorable W. Louis Sands, United States District Court, Middle District of Georgia, WITHIN TEN (10) DAYS of receipt thereof

**SO RECOMMENDED**, this 21st day of February, 2008.

                                                      //S Richard L. Hodge
                                                      RICHARD L. HODGE
                                                     UNITED STATES MAGISTRATE JUDGE

msd